IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )
                                  )
          v.                      )    Criminal No. 04-36 Erie
                                  )
MAURICE FRANCIS FOLEY             )

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRE-SENTENCE REPORT

AND NOW comes the United States of America, by and through its attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Christian A. Trabold, Assistant United States Attorney for said district, and states as follows:

**I.    Booker Does Not Require Sentencing Enhancements to be Proven to a Jury Beyond a Reasonable Doubt.**

Foley argues that under the Supreme Court's decision in United States v. Booker, ___ U.S. ___, 125 S.Ct. 738 (2005), the obstruction of justice and leader/organizer sentencing enhancements cannot be applied to him because they were not proven to a jury beyond a reasonable doubt. He is mistaken.

In Booker, the Supreme Court specifically rejected the argument that the existing mandatory guidelines system could continue to operate by engrafting onto it the Sixth Amendment procedures required by Blakely, reasoning that to require upward enhancements to be proven to a jury beyond a reasonable doubt would "undermine the sentencing statute's basic aim," 125 S. Ct. at 760, and "would so transform the scheme that Congress created that

Congress likely would not have intended the Act as so modified to stand." Id. at 759. See also id. at 763 ("Congress would not have enacted sentencing statutes that make it more difficult to adjust sentences upward than to adjust them downward.")(emphasis in original). Thus, the Supreme Court unequivocally spurned Foley's claim.

Rather, the Booker court made clear that this Court must calculate the guideline range, considering evidence unrestricted by the "typical 'jury trial' evidentiary limitations," and using the preponderance of the evidence standard. Id. at 759-60, 765, 767; see McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005) (Booker "held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence"). Indeed, those Courts of Appeal addressing the issue agree that a defendant's "Guideline range should be determined in the same manner as before" Booker. United States v. Mares, 402 F.3d 511, 516-19 (5th Cir. 2005); accord United States v. Mooney, 401 F.3d 940, 949 (8th Cir. 2005) ("Judicial fact finding is permitted as long as it is understood that the guidelines are not mandatory."); United States v. Shelton, 400 F.3d 1325, 1332, n. 9 (11th Cir. 2005) ("A sentencing court under Booker still must consider the Guidelines, and, such consideration necessarily requires the sentencing court to calculate the Guidelines sentencing range in the same manner as before Booker"); United States v. Crosby, 397 F.3d 103, 112-15 (2d Cir. 2005) ("Guidelines range is normally to

be determined in the same manner as before"); <u>United States v.</u>
<u>Hughes</u>, 401 F.3d 540, 546 (4th Cir. 2005) ("Consistent with the
remedial scheme set forth in <u>Booker</u>, a district court shall first
calculate (after making the appropriate findings of fact) the range
prescribed by the guidelines.").

Therefore, under <u>Booker</u> and its progeny the obstruction
of justice and leader/organizer sentencing enhancements do not have
to be proven to a jury beyond a reasonable doubt and Foley's
objection to the contrary should be denied.

## II. There Is Ample Evidence that Foley Obstructed Justice and Was the Leader/Organizer of the Conspiracy.

### A. Obstruction of Justice

Section 3C1.1 of the United States Sentencing Guidelines
mandates that:

> If (A) the defendant willfully obstructed
> or impeded, or attempted to obstruct or
> impede, the administration of justice
> during the course of the investigation,
> prosecution or sentencing of the instant
> offense of conviction, and (B) the
> obstructive conduct related to (i) the
> defendant's offense of conviction and any
> related conduct; or (ii) a closely
> related offense, increase the offense
> level by **2** levels.

U.S.S.G. §3C1.1 (2003).  The Application Notes set forth a non-
exhaustive list of examples of the types of conduct to which §3C1.1
is to apply, which include:

> a)    threatening, intimidating, or otherwise unlawfully
>        influencing a co-defendant, witness, or juror,
>        directly or indirectly, or attempting to do so;

3

       b)    committing, suborning, or attempting to suborn perjury; ...

       d)    destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding ...

U.S.S.G. §3C1.1, Application Note 4 (2003).

Foley claims that there is insufficient evidence to support an obstruction of justice sentence enhancement, arguing that "encouraging another to stand on his Constitutional rights does not constitute obstruction." Foley has done much more than extol the virtues of his co-defendants' Constitutional rights.

At his change of plea hearing, Foley agreed with the government's recitation of the evidence against him, which included the revelation that he had written over thirty letters that were the crux of the government's previously filed Motion to Admit Evidence. (N.T., Change of Plea, pp. 20-24). In those letters Foley repeatedly instructed co-conspirators to hide evidence, and to refuse to reveal any information to the police. Foley instructed others to take responsibility for firearms so that he could avoid conviction for having possessed them while a convicted felon. He even provided his then girlfriend with the combination to a safe where one of his guns was located, so that her false claim of ownership would be bolstered. Foley also instructed John Kirkpatrick to meet with him at SCI-Albion so that they could get their stories straight. Likewise, in a letter to Eric Dunn, Foley indicated that he would make sure Dunn did not lose his house

while incarcerated if Dunn would refuse to cooperate. These are just a sample of Foley's obstructive endeavors. Indeed, Foley's attempts to obstruct justice in this case are so relentless and blatant that it is difficult to imagine a more appropriate circumstance for the application of the obstruction of justice enhancement.

### B.  Role in the Offense - Leader/Organizer

Pursuant to the United States Sentencing Guidelines, a defendant's offense level is to be increased four levels if he was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.  U.S.S.G. §3B1.1(a). The commentary lists the following factors that the court should consider in distinguishing a leadership and organizational role from one of mere management or supervision:

> (1) the nature of participation in the commission of the offense;
>
> (2) the recruitment of accomplices;
>
> (3) the claimed right to a larger share of the fruits of the crime;
>
> (4) the degree of participation in planning or organizing the offense;
>
> (5) the nature and scope of the illegal activity; and
>
> (6) the degree of control and authority exercised over others.

U.S.S.G. §3B1.1, Commentary, Application Note 4 (2003). However, the government need not present evidence of every factor in order

for a defendant to be found a leader or organizer because the commentary is only a suggestion of factors which the court should consider in making its determination. United States v. Ortiz, 878 F.2d 125, 127 (3d Cir. 1989).

For instance, in Ortiz, the court found the defendant to be a leader/organizer in relation to his conviction for a single cocaine distribution because he made the decision regarding the quantity and price to be paid for the cocaine, he gave directions to some of the participants in the transaction, he directed his son to act as a lookout, he directed the place for the transaction to occur, and he helped recruit two of the accomplices. Ortiz, 878 F.2d at 127. The court found no merit to the defendant's claim that there was no evidence concerning the size of his share of the fruits of the cocaine distribution. Ortiz, 878 F.2d at 127.

Here again Foley's aforementioned letters provide the starkest evidence that he was unequivocally the leader of the charged conspiracy. Time and time again the letters show Foley providing instructions and orders on a multitude of different issues. Foley ordered the collection of drug debts from various co-conspirators. In one letter he even instructed that the letter itself be shown to those who may be reluctant to pay. He ordered that no one speak to the police or if they did, to lie for him. He ordered that incriminating evidence be moved, hidden or discarded.

Moreover, almost all of the profits derived from the conspiracy went to Foley. Those who were distributing the

marijuana for Foley made a pittance in comparison to Foley's take. Foley also recruited people into the conspiracy and had many of those individuals travel to California and back transporting the marijuana.  It is plain from the letters and the cooperation of numerous co-conspirators that Foley was in total control of this conspiracy and as such, the leader/organizer enhancement is applicable to him.

### III. Foley's Criminal History Category Does Not Significantly Over Represent the Seriousness of His Past or Future Threat to Society.[1]

Foley argues that he is entitled to a downward departure because his criminal history category overstates the seriousness of his criminal history.  Section 4A1.3[2] provides in relevant part:

> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes.  An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II),

---

[1]

Foley also argues that the pre-sentence report incorrectly calculates his total criminal history points.  The government contends that the points as calculated are correct, including the additional two criminal history points  for Foley's conviction in Missouri for possession of marijuana, which is referenced in the probation department's addendum to the pre-sentence report.

[2]

Although Section 4A1.3 of the Sentencing Guidelines is a policy statement rather than a guideline, it is an authoritative guide to district courts. United States v. Shoupe, 988 F.2d 440, 442 n.1 (3rd Cir. 1993) (citations omitted).

and therefore consider a downward departure
from the guidelines.

U.S.S.G. § 4A1.3, ¶3.

While recognizing that a district court may downward depart pursuant to section 4A1.3, the Third Circuit has emphasized that such a downward departure is only justified in cases where a defendant's criminal history category "*significantly* over-represents" the seriousness of the defendant's past conduct and future threat to society. <u>United States v. Shoupe</u>, 988 F.2d 440, 447 (3rd Cir. 1993) (emphasis in original). This is not one of those cases.

A review of Foley's criminal history demonstrates that it is quite distinguishable from the example in section 4A1.3, where the Sentencing Commission suggested that a downward departure may be appropriate. Unlike the Commission's example, Foley was adjudicated delinquent on five separate occasions for offenses ranging from theft by unlawful taking, to possession of drug paraphernalia, to burglary and conspiracy to commit burglary.

Foley then followed up his abysmal record as a juvenile with a series of adult convictions. Foley did not wait long to begin his long journey through the adult criminal justice system. While just eighteen, Foley was convicted for a string of seven thefts and an additional criminal mischief. While nineteen Foley, was convicted of burglarizing a laundromat and a retail theft. Foley, using the name Joseph R. Long, was then convicted two years

later of a larceny offense in New York state. The probation department's addendum to the pre-sentence report also addresses Foley's conviction in Missouri for marijuana possession. All told, Foley has seventeen total involvements with the criminal justice system.

Moreover, the pre-sentence report reveals Foley's total unwillingness or inability to abide by the rules while on parole or probation. Foley has been revoked from parole or probation on multiple occasions. While on supervision on his burglary conviction alone his parole was revoked three times.

In addition, in light of Foley's numerous parole revocations his convictions are not distant in time from the instant conviction. In fact, Foley was a fugitive from his parole supervision on his burglary conviction for a significant portion of the conspiracy involved in this case. Therefore, there has been no significant period of non-criminal activity in Foley's history. See United States v. Moore-Bey, 981 F.Supp. 688 (D.D.C. 1997), aff'd, 159 F.3d 638 (D.C. Cir. 1998), cert. denied, 525 U.S. 918 (1998) (twenty year gap in time between past acts and instant offense did not mitigate the seriousness of defendant's criminal history where defendant was incarcerated or on probation for most of that twenty year period). Moreover, Foley's frequent convictions and revocations have not served as a deterrent, since he engaged in an extensive cross country drug enterprise while

absconding from parole.  Foley has thus plainly demonstrated his total disinterest in being rehabilitated.

WHEREFORE, the government respectfully requests that this Court deny Foley's request for a downward departure and reject his objections to the Pre-Sentence Investigation Report.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney


s/Christian A. Trabold
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013