IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA        )
                                )
        v.                      )   CRIMINAL NO. 04-36 ERIE
                                )
MAURICE FRANCIS FOLEY           )



CHANGE_OF_PLEA

——— — ———



Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Friday, April 29, 2005.



APPEARANCES:
——————
        CHRISTIAN A. TRABOLD, Assistant United States
        Attorney, appearing on behalf of the Government.

DAVID A. SCHROEDER, Esquire, appearing on behalf
of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1           P R O C E E D I N G S
            – – – – – – – – – –

2

3           (Whereupon, the Plea proceedings began at

4   11:32 a.m., on Friday, April 29, 2005, in Courtroom C.)

5

6           THE COURT:  Mr. Schroeder, did you receive a copy of

7   Mr. Foley's letter?

8           MR. SCHROEDER:  I did not receive a copy, your

9   Honor --

10          THE COURT:  Would you please give that to Mr.

11  Schroeder.  Incidentally, I'm going to direct that be marked

12  and made an exhibit in this change of plea hearing.  Does your

13  client want to proceed?

14      MR. SCHROEDER:  Yes, your Honor, I've discussed the

15  contents of the letter with Mr. Foley.  In terms of the

16  chronology in this matter, Mr. Lucas and I met Mr. Foley Monday

17  evening of this week and discussed the entire matter.  Even

18  though I represent Mr. Foley, Mr. Lucas also came with me to

19  discuss the totality of the circumstances.  It was after that

20  meeting that Mr. Foley still had some issues, some concerns.

21  It was after that meeting he wrote this letter.  This morning

22  at 8:30 I went back to the Erie County Prison to explain the

23  entire process, the actual terms of the negotiated plea,

24  subsequent to our meeting on Monday.  I explained everything to

25  Mr. Foley again today.  And he now indicates to me that he now


3


1  understands everything and is willing to proceed and has no

2  further issues nor the need for any further time in this matter

3  based upon what he just indicated to me.

4      THE COURT:  All right, have him come up to the

5  podium.  Bring that letter up, give me the letter back, please.

6      Mr. Foley, I'm informed that you wish to change the

7  plea that you previously entered at Counts One and Three of

8  Indictment No. 04-36 Erie to a plea of guilty, is that correct?

9      THE DEFENDANT:  Yes.

10     THE COURT:  I'm going to ask you to keep your voice

11  up for the court reporter.  Before accepting your guilty plea,

12  there are a number of questions that I will ask you to make

13  certain it is a valid plea.  If you do not understand any

14  question, please tell me and I will explain it to you.  If at

15  any time you wish to consult with Mr. Schroeder, tell me that

16  and I will give you time to consult with him.  I give you these

17  instructions because it is essential to a valid plea that you

18  understand every question before you answer it.  Would you

19  please raise your right hand.

20     (Whereupon, the Defendant, MAURICE FRANCIS FOLEY,

21  was sworn.)

22     THE COURT:  Do you understand that now you have been

23  sworn, your answers to my questions are subject to the

24  penalties of perjury or of making a false statement if you do

25  not answer truthfully?

4

1    THE DEFENDANT:  Yes.

2    THE COURT:  State your full name?

3    THE DEFENDANT:  Maurice Francis Foley.

4    THE COURT:  How old are you?

5    THE DEFENDANT:  Thirty-two.

6    THE COURT:  How far did you go in school?

7    THE DEFENDANT:  GED.

8    THE COURT:  Are you able to communicate in English?

9    THE DEFENDANT:  Yes.

10   THE COURT:  Mr. Schroeder, have you been able to

11   communicate with him in English?

12   MR. SCHROEDER:  I have, your Honor.

13   THE COURT:  Have you taken any drugs or medication

14   or drunk any alcoholic beverages in the past 24 hours?

15   THE DEFENDANT:  Just medication prescribed for me at

16   the jail, nothing significant.

17   THE COURT:  Well, you tell me what they are?

18   THE DEFENDANT:  Clonopin, Benadryl --

19   THE COURT:  Do you have something in your mouth?

20   THE DEFENDANT:  A piece of candy.

21   THE COURT:  Get it out.  Do any of those medications

22  in any way effect your ability to think clearly?

23        THE DEFENDANT:  No.

24        THE COURT:  Are you now or have you recently been

25  hospitalized or treated for narcotic addiction?


                                5


1         THE DEFENDANT:  No.

2         THE COURT:  Do you understand what's happening here

3  today?

4         THE DEFENDANT:  Yep.

5         THE COURT:  Does either counsel have any doubt about

6  the competence of this defendant to plead guilty at this time

7  to the charge in the Indictment; Mr. Trabold?

8         MR. TRABOLD:  No, your Honor.

9         THE COURT:  Mr. Schroeder?

10        MR. SCHROEDER:  No, your Honor.

11        THE COURT:  I find the defendant is competent to

12  plead.

13        THE COURT:  Do you have an attorney with you here

14  today?

15        THE DEFENDANT:  Yes.

16          THE COURT:  What's his name?

17          THE DEFENDANT:  Dave Schroeder.

18          THE COURT:  Have you had a sufficient opportunity to

19  discuss your case with him?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Are you satisfied with the work that

22  he's done for you?

23          THE DEFENDANT:  Very satisfied.

24          THE COURT:  Do you understand that if you continue

25  to plead not guilty and do not change your plea, you would have

6

1  the right to be assisted by an attorney at the trial of the

2  charge against you?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Do you understand that if you did not

5  enter a guilty plea and if you qualified financially, you would

6  be entitled to be assisted by an attorney at no cost to you at

7  every phase of the processing of the charges against you?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that if did not plead

10  guilty and that if there were a trial, under the Constitution

11  and laws of the United States, you would be entitled to a

12  speedy trial by a judge and jury on the charge?

13      THE DEFENDANT:  Yes.

14      THE COURT:  Do you understand that if there were a

15  trial, you would be presumed to be innocent at the trial of the

16  charge against you?

17      THE DEFENDANT:  Yes.

18      THE COURT:  Do you understand that if there were a

19  trial, the government would be required to prove your guilt by

20  competent evidence and beyond a reasonable doubt before you

21  could be found to be guilty?

22      THE DEFENDANT:  Yes.

23      THE COURT:  Do you understand that if there were a

24  trial, you would not have to prove that you were innocent?

25      THE DEFENDANT:  Yes.


7


1       THE COURT:  Do you understand that if there were a

2  trial, the jury would have to be unanimous in order to find you

3  guilty of the charge?

4         THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand that if there were a

6    trial, you would have the right to participate in the selection

7    of the jury; that you would have the right to strike or

8    eliminate any prospective juror if it was demonstrated that the

9    juror would be unable to render a fair and impartial verdict;

10   and that you would have the right to strike or eliminate ten

11   jurors from the jury, and one alternate juror, without giving

12   any reason at all for so doing?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you understand that if there were a

15   trial, the witnesses for the government would have to come to

16   court and they would have to testify in your presence?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Do you understand that if there were a

19   trial, your counsel could cross-examine the witnesses for the

20   government, object to evidence offered by the government and

21   then offer evidence on your behalf?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you understand that if there were a

24   trial, the government would have to pay witness fees to

25   witnesses which you wished to call on your behalf, if you

8

1  qualified as being financially unable to pay those fees?

2       THE DEFENDANT:  Yes.

3       THE COURT:  Do you understand that if there were a

4  trial, you would have the right to testify if you chose to?

5       THE DEFENDANT:  Yes.

6       THE COURT:  Do you understand that if there were a

7  trial, you would have the right not to testify and that no

8  inference or suggestion of guilt could be drawn from the fact

9  you did not testify?

10       THE DEFENDANT:  Yes.

11       THE COURT:  If you plead guilty and I accept your

12  plea, do you understand that you will waive your right to a

13  trial and the other rights I have just mentioned to you, that

14  there will be no trial, and I will enter a judgment of guilt

15  and sentence you on the basis of your guilty plea after

16  considering a presentence report?

17       THE DEFENDANT:  Yes.

18       THE COURT:  If you plead guilty, do you understand

19  that you'll also have to waive your right not to incriminate

20    yourself, because I will ask you questions about what you did

21    in order to satisfy myself that you are guilty as charged and

22    you will have to acknowledge your guilt?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Now that I have mentioned your rights to

25    you, do you still want to plead guilty?

9

1          THE DEFENDANT:  Yes.

2          THE COURT:  Have you received a copy of the

3    Indictment naming you and have you discussed with your counsel

4    the charges in the Indictment to which you intend to plead

5    guilty today?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that you are charged

8    in Count One as follows:  "From in and around May 1998, to in

9    and around August 2003, in the Western District of Pennsylvania

10   and elsewhere, the defendants, Maurice Francis Foley, also

11   known as Maurice Hoover, also known as Clarence Lee Oday, II,

12   also known as Luke; John Kirkpatrick, also known as Hatrack;

13   Jeffrey Scott Artello, also known as Fat Man, also known as

14    Tattoo; Eric Thomas Dunn, also known as Sheister; Ann Marie

15    Weber; Paul Andrew Bole; Paul Anthony Butler, also known as

16    Coin Flipper; and Michael Patrick Foley, II, also known as Cuz,

17    did knowingly, intentionally and unlawfully conspire with each

18    other and others whose identities are both known and unknown to

19    the grand jury, to distribute and possess with intent to

20    distribute 100 kilograms or more of a mixture and substance

21    containing a detectable amount of marijuana, a Schedule I

22    controlled substance, and 100 or more marijuana plants,

23    contrary to the provisions of Title 21, United States Code,

24    Sections 841(a)(1), et seq." Do you understand that charge?

25         THE DEFENDANT:  Yes.


                              10


1         THE COURT:  Do you understand that you are charged

2    in Court Three as follows:  "Or on about April 17, 2003, in the

3    Western District of Pennsylvania, the defendant, Maurice

4    Francis Foley, also known as Maurice Hoover, also known as

5    Clarence Lee Oday, II, also known as Luke, knowingly did use

6    and carry a firearm, that is a Ruger Super Blackhawk, .44

7    caliber pistol, and a Mossberg 20-gauge pistol grip shotgun,

8   during and in relation to drug trafficking crimes for which he

9   may be prosecuted in a court of the United States, that is

10  conspiring to distribute and possess with intent to distribute

11  100 kilograms or more of a mixture and substance containing a

12  detectable amount of marijuana, contrary to the provisions of

13  Title 21, United States Code, Section 846, as charged at Count

14  One of this Indictment, and distributing and possessing with

15  intent to distribute a mixture and substance containing a

16  detectable amount of methamphetamine, contrary to the

17  provisions of Title 21, United States Code, Section 841(a)(1),

18  as charged at Count Two of this Indictment, and did knowingly

19  and unlawfully possess said firearms in furtherance of said

20  drug trafficking crimes.

21          In violation of Title 18, United States Code,

22  Section 924(c)(1)(A)(i)."  Do you understand that charge?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Now, as to Count One, in order for the

25  crime of conspiracy to distribute and possess with intent to

11

1   distribute 100 kilograms or more of a mixture and substance

2    containing a detectable amount of marijuana, in violation of

3    Title 21, U.S. Code, Section 846 to be established, the

4    government must prove all of the following essential elements

5    beyond a reasonable doubt.

6          That two or more persons came to a mutual

7    understanding or agreement to try to accomplish a common and

8    unlawful plan to distribute and/or possess with intent to

9    distribute the controlled substance charged in the Indictment.

10          That the defendant knowingly and willfully became a

11    member of the conspiracy.

12          That marijuana is a Schedule I controlled substance,

13    pursuant to 21 U.S.C. Section 812(c), et seq.

14          And that the conspiracy had the specific unlawful

15    purpose of distributing and/or possessing with intent to

16    distribute 100 kilograms or more of a mixture and substance

17    containing a detectable amount of marijuana.

18          Do you understand the elements as to Count One?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Also, as to Count One, do you understand

21    that the maximum penalties are a term of imprisonment of not

22    less than five years to a maximum of 40 years.

23          A fine not to exceed $2 million.

24          A term of supervised release of at least four years.

25          For a subsequent felony drug conviction that is


                                    12


1   final, whether federal, state or foreign; a term of

2   imprisonment of not less than 10 years to a maximum of life.

3          A fine not to exceed $4 million.

4          A term of supervised release of at least eight

5   years.

6          As well as a mandatory special assessment of $100.

7          Do you understand the maximum penalty for a

8   violation as to Count One?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you understand that as to Count

11   Three, in order for the crime of using and carrying a firearm

12   during and in relation to a drug trafficking crime, in

13   violation of 18 U.S.C. Section 924(c), et seq., to be

14   established, the government must prove all of the following

15   essential elements beyond a reasonable doubt.

16          That the defendant committed the drug trafficking

17 crimes charged in Counts One or Two of the Indictment.

18         And that the defendant knowingly used and carried a

19 firearm in relation to the drug trafficking crimes charged in

20 Counts One or Two of the Indictment in furtherance of said drug

21 trafficking crime.

22         Do you understand the elements as to Count Three?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand that the maximum

25  penalty for a violation of Count Three is a term of


                                13


1  imprisonment of not less than five years, nor more than life

2  imprisonment.  Notwithstanding any other provision of law, the

3  court shall not place on probation or suspend the sentence of

4  any person convicted of a violation of this subsection, nor

5  shall the term of imprisonment imposed run concurrently with

6  any other term of imprisonment, including that imposed for the

7  drug trafficking crime.

8         A fine of $250,000.

9         A term of supervised release of not more than three

10  years.

11          As well as a mandatory special assessment of $100.

12          Do you understand the maximum penalty as to Count

13   Three?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Has anybody made any threat to you or to

16   anyone else that has forced you in any way to plead guilty?

17          THE DEFENDANT:  No.

18          THE COURT:  Has there been a plea agreement?

19          MR. TRABOLD:  There is, your Honor.  I've marked it

20   Government Exhibit No. 1.  Mr. Foley and counsel have signed

21   it.  I would ask that it be admitted.

22          THE COURT:  All right.

23          MR. TRABOLD:  The pertinent provisions are that Mr.

24   Foley agrees to plead guilty to Counts One and Three.  And

25   acknowledges responsibility for the conduct charged in Counts


14


1    Two, Four and Six through Sixteen.

2          Additionally, there are some forfeiture provisions

3    in the plea agreement, which indicate that Mr. Foley agrees to

4    forfeit his interest in over $215,000 in cash.  His interest in

5    three, actually, two pieces of real estate.  And, again, the

6    government is not seeking to forfeit the property on McChesney

7    Road.  And, also, Mr. Foley agrees to forfeit his interest, if

8    indeed he has any interest, in three vehicles and a coin

9    collection.

10           Additionally, your Honor, Mr. Foley waives his right

11   to appeal except for some very limited circumstances.  Those

12   circumstances would be if your sentence exceeds the statutory

13   limit or unreasonably exceeds the guideline.  Additionally,

14   this is a conditional plea in the sense that Mr. Foley will

15   retain the right to file an appeal on the sole issue of whether

16   the motion to suppress in this case was properly denied by your

17   Honor.

18           THE COURT:  All right.

19           MR. TRABOLD:  Beyond that, your Honor, there is a

20   stipulation in this case that the amount of marijuana

21   attributable to Mr. Foley is at least 700 kilograms but less

22   than 1,000 kilograms.  And in exchange for Mr. Foley's guilty

23   plea, the government will of course recommend a three-point

24   reduction in offense level.

25           THE COURT:  Mr. Foley, have you had an opportunity

15

1   to read and review the plea agreement before you came to court

2   today?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Did you discuss it with your lawyer?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Are you in full agreement with all the

7   terms and conditions?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And is that your signature which appears

10  on the document?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And do you understand that by signing

13  it, you are attesting by your signature that you agree with it?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Let me ask you a couple questions about

16  the letter which I read into the record earlier.  Where you

17  indicated that in part, "I don't think we should proceed to

18  trial when we have not exhausted our attempts to reach a plea

19  agreement, which I still think is possible.  Please understand

20  my situation."  That letter, is it accurate to say, as your

21  lawyer informed me, was written at a time before you had an

22  opportunity to further discuss your plea agreement with your

23  counsel?

24      THE DEFENDANT:  Yes, I just met with him and the

25  other lawyer, Tim Lucas.  I had all these big decisions to make

16

1  like really fast, I was just kind of confused at the time.

2      THE COURT:  All right.  You're not confused now, are

3  you?

4      THE DEFENDANT:  No, it's all right now.

5      THE COURT:  And the fact that you are proceeding

6  with your change of plea today, you are not doing that under

7  duress or complaint or unwillingly, is that correct?

8      THE DEFENDANT:  That's correct.

9      THE COURT:  All right.  And you don't need anymore

10  time to think about it, is that right?

11      THE DEFENDANT:  No.

12      THE COURT:  All right.  Has anybody made any

13  promise, other than the plea agreement, that has caused you to

14  plead guilty today?

15          THE DEFENDANT:  I don't know if it would be called a

16   promise, concerning my co-defendant, he was to get reduced

17   charges and stuff.

18          THE COURT:  Run that by me again?

19          THE DEFENDANT:  Concerning my co-defendant, John

20   Kirkpatrick, there were certain things, he was going to get

21   certain things.

22          THE COURT:  I don't know what you're talking about,

23   what do you mean?

24          MR. SCHROEDER:  Your Honor, if I may.  As I

25   indicated to you earlier, Attorney Lucas, who represents Mr.


                              17


1   Kirkpatrick, and myself visited with Mr. Foley Monday.  And we

2   discussed what Mr. Kirkpatrick's plea was going to be, what the

3   stipulations of the government were going to be with respect to

4   that.  That's what Mr. Foley is referring to.

5          THE COURT:  Okay.  But is that what you were talking

6   about, Mr. Foley?

7          THE DEFENDANT:  Yes.

8          THE COURT:  But no one, whether it be a lawyer or

9    the U.S. Attorney or anybody else in the world, has promised

10   you anything beyond what was represented in the plea agreement,

11   in return for your guilty plea, is that correct?

12        THE DEFENDANT:  That's correct.

13        THE COURT:  All right.  And you understand that I'm

14   not required to accept the plea agreement that you've entered

15   into and may reject it.  If I do, you would be advised in open

16   court and you would have the opportunity to withdraw your

17   guilty plea.  If the plea agreement is rejected, you may

18   nevertheless continue your plea of guilty, and if you persist

19   in your guilty plea after the plea agreement is rejected, your

20   sentence or the disposition of your case may be less favorable

21   to you than that proposed in the plea agreement.  Do you

22   understand that?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Do you understand that the offense to

25   which you are pleading guilty is a felony offense, if your plea


18


1    is accepted, you will be adjudged guilty of that offense and

2    that such adjudication may deprive you of valuable civil

3    rights; such as the right to vote, hold public office, serve on

4    a jury and possessing any type of firearm; do you understand

5    that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Under the Sentencing Reform Act of 1984,

8    the United States Sentencing Commission has issued guidelines

9    for judges to follow in determining sentences in criminal cases

10   for offenses occurring after November 1, 1987.  Have you and

11   your attorney talked about how the Sentencing Guidelines might

12   apply to your case, and the fact that the suggested guideline

13   ranges are now advisory by virtue of two recent Supreme Court

14   decisions?

15           THE DEFENDANT:  Yes.

16           THE COURT:  And do you understand that I will not be

17   able to determine the advisory guideline sentence for your case

18   until after the presentence report has been completed and you

19   and the government have had an opportunity to challenge the

20   facts reported by the probation officer?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Keep your voice up, please.  Do you

23   understand that after it has been determined what guideline

file:///A|/FOLEYPLE.TXT

24    sentence applies to a case, the judge does have the authority,

25    in some circumstances, to impose a sentence that is more severe

19

1    or less severe than called for by the guidelines?

2        THE DEFENDANT:  Yes.

3        THE COURT:  And do you understand that under certain

4    circumstances you or the government may have the right to

5    appeal any sentence which I impose?

6        THE DEFENDANT:  Yes.

7        THE COURT:  And do you understand that parole has

8    been abolished, and that if you are sentenced to a term of

9    imprisonment, you will not be released on parole?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Do you understand that if the sentence

12    is more severe than you expected it to be, you will still be

13    bound by your guilty plea and that you will have no right to

14    withdraw it?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Except for your discussions with Mr.

17    Schroeder about the Sentencing Guidelines, has anybody made any

18  prediction or promise to you about what your sentence is going

19  to be?

20          THE DEFENDANT:  No.

21          THE COURT:  Has anything that I've said here today

22  suggested to what your actual sentence will be?

23          THE DEFENDANT:  No.  We discussed what the guideline

24  range was generally, that's it.

25          THE COURT:  But has anything I said here earlier

20

1  suggested to you what I'm really going to sentence you to?

2          THE DEFENDANT:  No.

3          THE COURT:  Have you been instructed by your

4  counsel, by government counsel, or by anybody else to respond

5  untruthfully to any question about a promised sentence?

6          THE DEFENDANT:  No.

7          THE COURT:  Did you, as charged in Counts One and

8  Three and as previously read to you by me, commit the offenses

9  as charged?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  Mr. Trabold, what would be

12    the government's proof?

13          MR. TRABOLD:  Your Honor, on April 17th of 2003, Mr.

14    Foley was apprehended by Pennsylvania parole agents for being a

15    fugitive from his parole supervision on his Erie County

16    burglary conviction dated back to 1992.  Upon his arrest, it

17    was discovered that on his person, Mr. Foley had a small amount

18    of marijuana and a quantity of methamphetamine on him.

19          Subsequent to his arrest on April 17th, the

20    Pennsylvania State Police executed a search warrant at his

21    property on April 18th.  That search resulted in the seizure of

22    approximately 75 pounds of marijuana, a California driver's

23    license bearing the name Clarence Oday, with Mr. Foley's

24    picture on it, a birth certificate, and a Social Security card

25    bearing the name Clarence Oday.  And inside a gun safe located


21


1    in Mr. Foley's garage at the property on Hill Road in

2    Seagertown, was located marijuana, a .44 caliber pistol, listed

3    in the Indictment, a quantify of methamphetamine, and slightly

4    over $16,000 in cash.

5          Also located during the search on April 18th, were

6   numerous books on how to change your identity and hide assets.

7   And numerous pieces of paperwork listing a name other than Mr.

8   Foley's.  Listing names such as Clarence Oday and other names

9   listed both in the Indictment and other names not listed in the

10  Indictment.  Further found inside of the safe in the garage

11  were a ledger book, which the government believes to be

12  essentially owe sheets in this case, bearing the nicknames of

13  various people both charged and uncharged in this case, with

14  what the government believes to be debts listed next to their

15  names.

16          Also found in a Silverado, a Chevy Silverado truck

17  found on the property on April 18th, was another ledger book,

18  also believed to be owe sheets.

19          Beyond that, your Honor, the government found a

20  whole host of documents which allowed the government to extend

21  the search in this case to other people and to go talk to other

22  people.  And were ultimately able to get search warrants on

23  places, other than the property on Hill Road.  One of those was

24  a job plan and a parole plan that was found on the property on

25  April 18th that Mr. Foley had filed for a burglary conviction

22

1    in 1992.  The parole plan listed John Kirkpatrick on Gorman

2    Road, Millcreek Township, as the place where Mr. Foley would

3    reside upon being paroled.  It also listed Elk Creek Wood

4    Processing on McChesney Road in East Springfield Township as a

5    place where Mr. Foley would be employed.

6         That property on McChesney Road was ultimately

7    searched by the government on August 6th of 2003.  And that

8    search resulted in a seizure of various firearms and over

9    $90,000 in cash, much of which was located in a bucket hidden

10   under the floor.

11        Beyond that, your Honor, located on the property on

12   April 18th were cashier's checks and other documentation

13   indicating that a Chevy Silverado pickup truck was purchased in

14   January of 2003 from Hallman's, up here on State Street in

15   Erie.  And it revealed, the documentation, as well as

16   subsequent interviews of the people at Hallman's, revealed that

17   an individual calling themselves Clarence Oday, who was

18   subsequently determined to be Mr. Foley, purchased the

19   Silverado for slightly over $44,000 in cash and cashier's

20   check, and that the individual identified himself as Mr. Oday,

21   which we now know to be Mr. Foley, purchased the vehicle with

22  Ann Weber, who is a listed co-conspirator in this case.  That

23  Mr. Oday originally wanted to title the vehicle in the name of

24  Excavating, Etc., but when told that would not be possible

25  unless there was insurance on the vehicle in that name, he then

23

1  titled the vehicle in Ann Weber's name.  It's the government's

2  position that that vehicle was bought with proceeds of illegal

3  drug activity.

4        Beyond that, your Honor, in this case there were 10

5  search warrants that were executed, both here and in

6  California, every one of those search warrants resulted in the

7  seizure of either drug proceeds or evidence of incriminating

8  value.

9        Numerous co-conspirators in this case were

10  interviewed, both charged co-conspirators and uncharged

11  co-conspirators, and the general framework of this conspiracy

12  was laid out consistently by all those co-conspirators.  And

13  the general framework was that Mr. Foley would obtain large

14  amounts of marijuana, typically in approximately 100 pounds at

15  a time.  He would then make arrangements for himself or other

16  people involved in the conspiracy, typically other people, to

17  drive the marijuana back from California and have it

18  distributed upon reaching Pennsylvania, to other people in

19  Pennsylvania via the use of the people that he's charged with

20  conspiring with.

21      The government also is in possession of numerous

22  letters written by Mr. Foley, a portion of which have been

23  provided to the court in the government's motion to admit

24  evidence, the government provided the court 32 letters.  All of

25  those letters were written by Mr. Foley, and they all bear some

24

1  relevance to this case, whether they be admissions by Mr.

2  Foley, statements in furtherance of a conspiracy or letters to

3  cooperating witnesses, discussing with them the value of them

4  cooperating with the government.

5      As part of the government's case, your Honor, the

6  government also executed a search warrant on a safety deposit

7  box in North Ridge, California, which we believe to be tied to

8  Mr. Foley, rented by an individual calling himself Clarence

9  Oday.  It contained approximately $1,500 cash, a coin

10    collection and Mexican money.

11          Beyond that, your Honor, we executed a search

12    warrant at a storage facility in Lancaster, California.  There

13    was also some evidence in the case, resulting from that search,

14    which we believe would be used against Mr. Foley in the event

15    that the case went to trial.

16          Finally, your Honor, the actual, real Clarence Oday

17    was interviewed in this case.  Mr. Oday is legally blind and on

18    SSI.  He indicated that he had never met Mr. Foley and that he

19    had never been to California or any other location implicated

20    in this case outside of Pennsylvania.  And that's just a brief

21    summarization of the evidence in this case.

22          THE COURT:  Mr. Foley, you just heard what Mr.

23    Trabold has said by way of a summary, do you agree with

24    everything that he just said?

25          THE DEFENDANT:  Yeah -- yes.


                              25


1          THE COURT:  All right.  Do you still wish to plead

2    guilty?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Is it your advice that he do so, Mr.

5     Schroeder?

6          MR. SCHROEDER:  Yes, your Honor.

7          THE COURT:  Because you acknowledge that are in fact

8     guilty as charged in Counts One and Three and because you know

9     about your right to a trial, and because you know what the

10     maximum possible penalty is and because you are voluntarily

11     pleading guilty, I will accept your guilty plea and enter a

12     judgment of guilty on your plea to Counts One and Three of

13     Indictment No. 04-36 Erie.

14          It is, therefore, the finding of the court in the

15     case of United States v. Maurice Foley, that this defendant is

16     fully competent and capable of entering an informed plea, and

17     that his plea of guilty is a knowing and voluntary plea

18     supported by an independent basis in fact containing each of

19     the essential elements of the offense and that, therefore, the

20     plea is accepted and the defendant is now adjudged guilty of

21     this charge.  All right, I'm going to have you sign the change

22     of plea.

23          (Whereupon, the Change of Plea was executed by the

24     Defendant and Defense Counsel.)

25      THE COURT:  Let the record also reflect that the

26

1   letter which Mr. Foley sent to me, which was read into the

2   record and discussed briefly, dated April 22nd, I have marked

3   as Exhibit 2, and it will be made part of the record under that

4   exhibit number.

5          A presentence investigation report will be prepared

6   by the probation office.  It is in your best interest to

7   cooperate with the probation officer in furnishing information

8   for the report because that report is going to be important in

9   my decision about what your sentence will be.  You and your

10  counsel will have the opportunity and the right to examine that

11  report before sentencing.

12         The disposition of sentencing in this case is set

13  for July 28, 2005, at 10 a.m. in this courtroom.  All right,

14  we're adjourned.

15

16         (Whereupon, at 12:00 p.m., the Plea proceedings were

17  concluded.)

18

19                    - - -

20

21

22

23

24

25


                              27


1              C E R T I F I C A T E
              – – – – – – – – – –

2

3

4

5      I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11  _____

12  Ronald J. Bench

13

14

15

16

17

18

19

20

21

22

23

24

25