**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-3824
_____

UNITED STATES OF AMERICA

v.

MAURICE FRANCIS FOLEY,
a/k/a Maurice Hoover,
a/k/a Clarence Lee Oday, II,
a/k/a Luke,

Maurice Francis Foley,

Appellant.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 04-cr-00036)
District Judge: Hon. Sean J. McLaughlin

Submitted Under Third Circuit LAR 34.1(a)
January 25, 2007

Before:  SCIRICA, Chief Judge, FUENTES and CHAGARES, Circuit Judges.
_____

(Filed:  February 27, 2007)


OPINION OF THE COURT

CHAGARES, Circuit Judge.

Maurice Foley pleaded guilty to a conspiracy to distribute marijuana and a related weapons offense and the District Court sentenced him to 330 months imprisonment. Foley appeals his conviction and sentence, contending that the District Court improperly denied a motion to suppress physical evidence and that the District Court failed to articulate the reasons for its sentence, violating 18 U.S.C. § 3553(c)(1). We reject both arguments and we will affirm.

I.

Because we write only for the parties, we keep the facts brief.

A Pennsylvania police officer heard from a previously reliable informant that "Mo" Foley, a wanted parole violator, was staying in Saegertown, Pennsylvania on weekends. The informant stated that Foley might be involved in manufacturing and distributing methamphetamine. The officer reported this information to state parole agents and accompanied three agents to the property described by the informant. The property contained two structures, a residence and a two-level garage.

Before entering onto the property, officers observed three vehicles drive up and park near the garage. Officers became concerned that they did not have an appropriate number of people to attempt apprehension, so they requested, and received, two additional officers. With four officers posted around the property, three officers approached the residence and knocked on the door. A woman answered and told the

2

officers that just she and her girlfriend were present. Her girlfriend informed officers that her boyfriend was in the garage. Neither admitted that they knew Foley's location.

Officers then went to the garage and knocked on its front door. Just before they entered the garage, someone remotely started the engine and lights of one of the three vehicles parked on the property. A man opened the door and officers observed another man inside, climbing down a ladder from the garage's second level. After restraining the two men inside the garage, and being told that other officers apprehended Foley outside the back door of the garage, two officers looked around both levels of the garage for additional people. In so doing, they observed drug paraphernalia and a shot gun.

Officers then returned to the residence, and searched it. Based on evidence found in the garage and the residence, officers executed a search warrant on the next day.[1] The evidence obtained in the garage, in the residence, and on Foley when he was apprehended, supported charges of conspiracy to distribute and possess-with-intent-to-distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B)(vii), and carrying a firearm during and in relation to a drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i).

---

[1] The District Court found the search of the residence improper, rejecting the government's argument that consent had been obtained or that a protective sweep was necessary. Excising the evidence found in the residence from the probable cause analysis, the District Court concluded that the search warrant remained valid because the evidence from the garage provided probable cause. In the garage, officers had observed a triple beam scale, many "ziploc-style" bags, a compact disc with white powder on it, a bag of green vegetable matter, a box of marijuana seeds and a 12-gauge shotgun. In Foley's pockets, officers found a bag of methamphetamine and a bag of marijuana.

Foley moved to suppress the evidence obtained from the garage. The District Court concluded the evidence was admissible because the tip that led officers to the property was reliable, the protective sweep of the garage was justified, and the contraband seized as a result of the sweep was in plain view.

Foley pleaded guilty to marijuana distribution and the weapons offense, but retained his right to appeal the denial of his motion to suppress. On appeal, Foley does not dispute that the evidence was in plain view, but he argues officers were not justified to look in the garage because they did not have reasonable suspicion to enter onto the property and, once there, they did not have adequate reason to engage in a protective sweep.

We will first address Foley's arguments regarding the outcome of the suppression hearing, and then turn to his request that we remand for re-sentencing. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

I.

"We review a District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review over the District Court's application of the law to those facts." United States v. Lockett, 406 F.3d 207, 211 (3d Cir. 2005). "Under the clearly erroneous standard, a finding of fact may be reversed on appeal only if it is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." American Home Products Corp. v. Barr Laboratories, Inc., 834 F.2d 368, 370-71 (3d Cir. 1987).

**A.**

Law enforcement officers do not need probable cause or a warrant before searching parolees and premises they are on – reasonable suspicion will suffice. United States v. Baker, 221 F.3d 438, 443-44 (3d Cir. 2000); United States v. Hill, 967 F.2d 902, 908-09 (3d Cir. 1992). "To decide whether reasonable suspicion exists, we consider the totality of the circumstances to determine whether the officer has a particularized and objective basis for suspecting legal wrongdoing." United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005) (internal quotation marks and citation omitted).

Foley argues that the informant's tip did not provide officers with reasonable suspicion. We disagree. This informant had proven reliable in the past and his information was specific enough in this instance to indicate reliability again. True, officers went to the Saegertown property on a Thursday even though the informant had indicated Foley was staying in Saegertown on weekends, but officers needed either reasonable suspicion that Foley himself would be present at the time they searched the property or reasonable suspicion that evidence of Foley's parole violations would be found. See Hill, 967 F.2d at 911. Foley acknowledges as much. Appellant's Br. at 23-24. Even if Foley was not in Saegertown on weekdays, evidence of his suspected parole violations (here, drug manufacturing) could be found.

Foley challenges the District Court's finding that the "description of the premises, as described by the informant, was subsequently checked out and the configuration of the structures on the premises were consistent therewith." App. at 256. After reviewing the

5

record, we cannot say this finding is clearly erroneous.  The officer who received the tip testified that the informant provided him with a general description of the property where Foley was staying – "something that would be easily identified once we were on that road" – and the officer stated that the description proved accurate.  App. at 99-100.  Foley admits that the description was accurate.  Appellant's Br. at 25.  Because the record supports the District Court's findings, we will not disturb them.  Nor can we find reason to disagree with the District Court's conclusion that the totality of the circumstances provided reasonable suspicion for officers to enter onto the Saegertown property.

**B.**

Foley argues that even if officers had reasonable suspicion to enter onto the property, they did not have justification to sweep the garage after Foley's apprehension.  The Supreme Court has recognized that "an in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.'"  Maryland v. Buie, 494 U.S. 325, 333 (1990) ("An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings.").  The same danger can arise from arresting a suspect just outside a home.  Sharrar v. Felsing, 128 F.3d 810, 824 (3d Cir. 1997).  In striking a balance with the privacy interests of the Fourth Amendment, the protective sweep doctrine allows "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."  Id. at 327.  A protective sweep must be "justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene."  Id. at 336.  It also must

be restricted to the areas from which the suspect's confederates could launch an attack. Id. at 334.

      Here, the District Court concluded the sweep was justified in part because officers observed drug paraphernalia before they looked for people hiding on the second level of the garage. Foley argues that this finding is clearly erroneous, but we disagree. The officer who conducted the sweep stated, "I observed, <u>before I went upstairs</u>, I observed a triple beam scale, I observed a disc with white power on it." App. at 201 (emphasis added). With testimonial evidence to support the District Court's finding, there is no basis to conclude the finding is clearly erroneous. Moreover, the circumstances justified a sweep even if the drugs were not observed until after officers returned to the ground floor of the garage. Even though officers did not have direct indication that someone else was lurking above them, "the purpose of a protective sweep is to protect agents from <u>concealed</u> threats." United States v. Winston, 444 F.3d 115, 119 (1st Cir. 2006) (emphasis added). Officers had articulable justifications to suspect a concealed threat: they saw three vehicles pull up to the property, but they were initially told only two people were present when they inquired at the residence; a vehicle started remotely as they knocked on the garage door, startling them and suggesting someone was trying to make a quick exit; upon entering the garage, officers encountered two people, one of whom was climbing down a ladder from the loft level; and while officers were in the garage, other officers apprehended Foley behind the garage, in an apparent escape

attempt. Under these conditions, officers were justified in looking in the garage for additional individuals who posed a danger to them.

It is possible for officers to search beyond the confines of a sweep, even if a sweep is initially justified. As the Supreme Court emphasized in <u>Buie</u>, a protective sweep can "last[] no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." <u>Buie</u>, 494 U.S. at 335-36. Here, officers testified to the brief nature and limited scope of the sweep. This is not a case in which the government failed to provide facts regarding the brevity of the search. <u>Cf.</u> <u>United States v. Akrawi</u>, 920 F.2d 418, 421 (6th Cir. 1990) ("Because the government failed to establish these facts, we will not presume that the sweep was short and that it occurred immediately after arresting [defendant]."). Reviewing the record, we are satisfied that this sweep was appropriately tailored to its purposes.

Accordingly, we will affirm the District Court's denial of Foley's motion to suppress.

II.

Foley next argues that the District Court failed to articulate reasons for imposing its sentence. Foley's plea agreement waived the right to appeal his sentence, but Foley argues that whether the District Court properly articulated its sentencing rationale falls within an exception to the waiver. The agreement retained Foley's right to appeal if the

"sentence exceed[ed] the applicable statutory limits set forth in the United States Code." App. at 299. Because a sentencing court is statutorily required to articulate its reasoning according to 18 U.S.C. § 3553(c), Foley argues he can raise a violation of 18 U.S.C. § 3553 on appeal. But 18 U.S.C. § 3553 does not provide the statutory maximum to which the agreement refers. The logical reading of the agreement suggests that the "applicable statutory limit" is the maximum punishment explicitly authorized by the United States Code for the offense to which Foley pleaded guilty. See 21 U.S.C. § 841. While Foley would have had a right to appeal if his sentence exceeded that statutory maximum, the text of the plea agreement suggests that Foley waived his § 3553 argument.

Although the text of the agreement indicates Foley waived his appeal, an unknowing or involuntary waiver will not be enforced. United States v. Khattak, 273 F.3d 557, 562 (3d Cir. 2001). "In determining whether a waiver of appeal is 'knowing and voluntary,' the role of the sentencing judge is critical." Id. at 563. Rule 11 of the Federal Rules of Criminal Procedure dictates that the court inquire whether the defendant knows the scope and import of the waiver. According to Rule 11, "the court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." See Fed. R. Crim. P. 11(b)(1)(n).

The District Court here did not explicitly ask Foley about his waiver of appeal. But in this case, we cannot say the court's failure to comply with Rule 11 established that Foley did not knowingly enter into his agreement. The government's counsel described

9

the agreement at the change-of-plea hearing, explaining to the court that Foley waived his right to appeal his sentence except "if [the court's] sentence exceed[ed] the statutory limit or unreasonably exceed[ed] the guideline [range]." App. at 284. Immediately after this description of the agreement, the court asked whether Foley had time to read and review the agreement, whether Foley had discussed it with his lawyer, and whether Foley agreed to all of its terms and conditions. Foley answered in the affirmative to all of these questions. App. at 284-85. Thus, it appears Foley did knowingly enter into the agreement, waiving his right to appeal. For the purposes of this not precedential opinion, however, we will assume that the District Court's failure to ask Foley about the conditions of his waiver make the waiver unenforceable. We reach the merits and will affirm the sentence.

Foley claims that the District Court failed to comply with 18 U.S.C. § 3553(c) in sentencing him to 270 months for the drug charge. Section 3553(c) requires a sentencing court "state in open court the reasons for its imposition of the particular sentence," and if the guideline range exceed 24 months, "the reason for imposing a sentence at a particular point within the range." 18 U.S.C. § 3553(c)(1). The guideline range for Foley's drug charge was 235 to 293 months imprisonment. App. at 310.

The District Court, here, provided "concrete reasons for its choice of sentences" and that is adequate to satisfy 18 U.S.C. § 3553(c)(1). See United States v. Gricco, 277 F.3d 339, 363 (3d Cir. 2002). In particular, the court provided the following explanation as to why it did not impose a less severe sentence:

10

> In my view this is a very serious offense. It involves a large-scale drug conspiracy. The record reflects that the defendant is a lifelong criminal and as far as I can tell completely unrepentant. The protection of the public from further crimes is a significant consideration. Deterrence in cases such as this is important as well. In addition, I have given serious consideration to the suggested or advisory guideline range.
> . . . . And to the extent that I would disagree with Father Peterson [who testified on behalf of the defendant] it is simply a reflection of the fact that Father Peterson sees the defendant through the eyes of a caring priest and friend, while I must view him, of course, simply as a judge.
> In short, in my view a significant sentence here is not only appropriate, but necessary, to prevent this one man criminal Tsunami from continuing to roll over this community.

Supp. App. at 78-79. In sum, the court satisfied 18 U.S.C. § 3553(c)(1), and no plain error was committed.

## III.

For the foregoing reasons, Foley's conviction and sentence will be affirmed.