**FILED**

**MAY 2 2 2008**

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

MAURICE F. FOLEY,
        Petitioner,

      v.

UNITED STATES OF AMERICA,
        Respondent.

Civil Action No. 1:08-CV-157
[Case No. 1:04-CR-36-SJM-01]

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE JUDGMENT

NOW COMES the petitioner, Maurice F. Foley, pro-se and who respectfully files within this court this Memorandum of Law In Support of Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255.

## I.   JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255 because Foley is imprisoned pursuant to a judgment that was rendered in violation of the United States Constitution.

## II.   STATEMENT OF THE CASE

On August 10, 2004, a grand jury in the Western District of Pennsylvania returned an indictment charging Foley and several

co-conspirators with a violation of 21 U.S.C. § 846. Specifically,
Count One charged that from around May of 1998 through August 2003,
Foley and his co-conspirators conspired to distribute and possess
wit intent to distribute more than 100 kilograms of a substance
containing marijuana and 100 or more marijuana plants in violation
of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(vii).

In Count Two of that same indictment, Foley was charged with
distribution and possession with intent to distribute a substance
containing methamphetamine in violation of 21 U.S.C. § 841(a)(1).
Count Three charged that Foley used and carried a .44 caliber
pistol and a 20 gauge shotgun on or about April 17, 2003, during
and in relation to a drug trafficking crime in violation of 18
U.S.C. § 924(c)(1). Count Four of the indictment charged Foley
with possessing a firearm in or around April of 2003, having
previously been convicted of burglary in the Court of Common
Pleas of Erie County, Pennsylvania, in violation of 18 U.S.C.
§ 922(g)(1). Foley was charged in Count Five of the indictment
with knowingly using a means of identification of another in
furtherance of a conspiracy to distribute and possess with intent
to distribute 100 or more kilograms of a substance containing
marijuana, in violation of 18 U.S.C. § 1028(a)(7) and (b)(3)(A).
In Counts Seven through Sixteen, Foley was charged, along with
Ann Weber, with conducting financial transactions in January of
2003 to conceal the proceeds of unlawful activity, specifically

II.

the proceeds of the distribution of controlled substances, in violation of 18 U.S.C. § 1956(a)(1)(B)(I). The indictment also set forth forfeiture and sentencing allegations as to Foley and his co-conspirators.

Foley filed a pretrial Motion to Suppress Evidence. The Government filed a response to that Motion. A hearing on the Motion was held in the district court on December 1, 2004. By oral order on December 1, 2004 at the conclusion of the hearing, the court denied Foley's Motion to Suppress Evidence.

On April 29, 2005, Foley entered a plea of guilty as to Counts One and Three of the indictment. Foley's plea of guilty was entered in conjunction with a plea agreement. The plea agreement was admitted during the change of plea proceedings. As part of the plea agreement, Foley acknowledged his responsibility for the conduct set forth in Counts Two, Four and Six through Sixteen, voluntarily forfeited $215,031.35, certain real property, vehicles and a coin collection.

The district court held a sentencing hearing on July 28, 2005. The district court, after ruling on the objections to the Presentence Report filed by Foley, determined that the advisory guideline offense level was 33 and the criminal history category was VI. The guideline provision as to Count One was thus determined to be 235 to 293 months, with five years as to Count Three, to run consecutive to Count One.

III.

The district court sentenced Foley to 270 months of imprisonment as to Count One and 60 months as to Count Two to be served consecutively. A timely Notice of Appeal was filed on August 5, 2005. An Appellate Brief was filed by Foley to the Court of Appeals for the Third Circuit on February 20, 2006. That brief raised two issues: (1) the district court erred in denying the motion to suppress evidence from a warrantless search and (2) the district court failed to articulate its reasons for choosing a particular sentence within the guideline range, which resulted in a sentence more than 24 months above the guideline range's low end. Foley's conviction and sentence were affirmed by the Third Circuit on February 27, 2007. A Petition for Rehearing En Banc was filed on April 10, 2007, but was subsequently denied on May 11, 2007.

Foley, through counsel, filed a Petition for a Writ of Certiorari with the United States Supreme Court on August 8, 2007. The Supreme Court denied the Petition on October 1, 2007.

IV.

### III.   ARGUMENT

#### A.   DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO CHALLENGE THE CRIMINAL HISTORY CALCULATIONS

In the Presentence Report, the United States Probation Office wrote that, "[t]he Defendant's NCIC rap sheet indicates he was arrested by the Erie Police Dept. on a private criminal complaint charging him with retail theft, at OTN: E-160168-1, on Oct. 27, 1992, the def. appeared before Erie Co. District Magistrate Joseph Lefavier & entered a guilty plea to the summary level offense of retail theft. On that date, he was ordered to pay fines & costs. District Mag. Lefaiver's office indicates details of the offense are no longer available." Presentence Report at paragraph 62. The probation officer further went on to state that the offense had occured on August 31, 1992 and that Foley was sentenced on October 27, 1992.

However, Foley contends that this information is erroneous and that he was incarcerated at the time of the alleged offense occurred. This contention is supported by the same Presentence Report. The Report stated, "[o]n April 10, 1992 the defendant represented by counsel, entered a guilty plea to the charge of theft.B.U.T. at Erie Co. Court of Common Pleas, Docket No. 194 of 1992. All other charges in this case were nol-prossed by the court on that date. On July 29, 1992 the defendant appeared before the

1.

court and was sentenced to $5\frac{1}{2}$ - 11 months imprisonment ..." Pre-Sentence Report at paragraph 54. As this passage notes, Foley was sentenced on July 29, 1992 and immediately began serving a prison sentence one month before the offense alleged in paragraph 62. Foley further contends that since his father and brother both have the first name of Maurice, the same as his, that this case may have been inadvertantly been placed on his NCIC rap sheet. But whatever the cause, clearly Foley was incarcerated at the time of the offense and thus could not have been the offender in the case.

Also, the Presentence Report stated, "[i]nfo provided by Pomfret Justice Court, Fredonia, NY indicates that the def. using the name Joseph R. Long, was arrested by Pomfret Town Police, Fredonia, NY, on July 24, 1994 & charged with the afore-noted offenses. On that same date, he appeared in the Pomfret Justice Court & was sent. as previously indicated." Presentence Report at paragraph 63. Foley contends that there was absolutely no evidence to demonstrate that the individual, Joseph Long, arrested and convicted for petty larceny in Pomfret, New York was in fact Foley. The criminal record and court papers indicated that an individual by the name of Joseph R. Long was arrested and convicted, but never indicated that Long and Foley were one and the same individual or that Foley ever used the alias "Joseph Long." Indeed, a quick review of the government's indictment in this case indicates a

2.

lengthy list of aliases used by Foley, however, notably missing from this list is any mention of the name "Joseph R. Long."

The right to effective assistance of counsel is found in the Sixth Amendment to the United States Constitution, which holds, in relevant part that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have Assistance of Counsel for his defen[s]e." This right was comprehensively discussed in Strickland v. Washington, 466 U.S. 668 (1984), in which the United States Supreme Court observed that the right to counsel is crucial to a fair trial because "access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution." Supra, at 686.

Any claim of ineffective assistance of counsel must be judged against the following benchmark: "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. The Court established a two prong test to make this determination. First, the petitioner must demonstrate that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment. To succeed on this first part, the petitioner must show that "counsel's representation fell below an objective standard of reasonable-ness ... under prevailing professional norms." Id., at 687-88.

3.

Second, the petitioner must show that the deficient performance prejudiced the defense. This requires showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." Id. at 687. To succeed on this second part, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. The Court defined "reasonable probability" as a "probability sufficient to undermine confidence in the outcome." Id. at 694.

It has also been held that a defendant is entitled to effective assistance of counsel at all critical stages of criminal proceedings, to include sentencing. See Mempa v. Rhay, 389 U.S. 128 (1968)(holding that a lawyer must be afforded to a defendant whenever a lawyer can be of substantial assistance, such as at the imposition of a sentence).

In reviewing Foley's claim that counsel provided ineffective assistance of counsel at sentencing, it must be first determined if counsel made unprofessional errors. First, defense counsel failed to put the Government through its burden of proof. It has been long held by this Circuit and many others that when the Government seeks to enhance a defendant's sentence, then it has the burden of proof as to establishing the facts to support the enhancement. See e.g. United States v. McDowell, 888 F.2d 285 (3rd Cir. 1989)

4.

and United States v. Urrego-Linares, 879 F.2d 1234 (4th Cir.), cert. denied, 493 U.S. 943 (1989). This Circuit stated in McDowell that "[i]t therefore logically follows that the burden of ultimate persuasion should rest upon the party attempting to adjust the sentence. Thus, when the Government attempts to upwardly adjust the sentence, it must bear the burden of persuasion. This prevents the criminal defendant from having to prove the negative in order to avoid a stiffer sentence." McDowell, 888 F.2d at 291.

In this case the Government sought to enhnace Foley's sentence by adding two points to Foley's criminal history category based on his alleged prior convictions. The Government had the burden of proving it. Yet defense counsel readily conceded the point without a fight, even though the language contained in the Presentence Report itself should have alerted counsel to the fact that the Government did not have sufficient evidence to support the two alleged convictions. The Strickland Court held that defense counsel must put the Government through the adversarial process in order to be effective.

"[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Strickland, 466 U.S. at 696.

Second, when defense counsel failed to object and put the

5.

district court on notice that the Presentence Report contained inaccuracies, defense counsel denied Foley his constitutional right under the Due Process Clause to be sentenced based upon reliable information. See Townsend v. Burke, 334 U.S. 736 (1948)(holding that due process guarantees a convicted criminal defendant the right not to have his sentence based upon materially false information). See also United States Sentencing Guidelines § 6A1.3. Had defense counsel objected, the district court would have had an affirmative duty, pursuant to Fed. R. Crim. P. 32(i)(3)(b), to ascertain the reliability and accuracy of the challenged information before sentencing Foley.

Additionally, an objective standard of reasonableness at the time of Foley's sentencing can be found in the American Bar Association's Rules of Professional Conduct, which holds that "[a] lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Rule 1.3, cmt. This principle was not followed by defense counsel and thus he committed unprofessional errors by failing to investigate the facts of Foley's alleged prior convictions, which was essential to ensuring that Foley obtained a lawful sentence.

6.

With regards to the prejudice prong of the Strickland test, Foley contends that counsel's errors resulted in him being denied a lower sentence. Based upon the Presentence Report, which included the two unchallenged prior convictions, the district court determined that Foley had an offense level of 33 and a criminal history category of VI, based upon an accumulation of 13 points. These findings resulted in a guideline range of 235 to 293 months for Count One, with a mandatory consecutive 60 month sentence as to Count Three. The district court ultimately sentenced Foley to 270 months as to Count One and 60 months as to Count Three, to run consecutive to Count One, for an aggregate of 330 months.

However, with a finding that even one of the two alleged prior convictions was invalid would have result in Foley's criminal history category being lowered to V. The applicable guideline range for this level would have been 210 to 262 months. Therefore, Foley has been given a 60 month sentence increase above his applicable guideline range. This was prejudicial.

"Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (2001).

In the Glover case, the Supreme Court reversed the Seventh Circuit's decision because that circuit held that a 6-21 month

7.

increase in' prison time was not significant enough to result in prejudice under the Strickland test. The Court noted that "any amount of actual jail time" may be a factor in determining prejudice. As shown above, the increase in this case was 5 years of imprisonment.

Further, this circuit has held that "an error in application of the Guidelines that results in use of a higher sentencing range should be presumed to affect the defendant's substantial rights." United States v. Knight, 266 F.3d 203, 207 (3rd Cir. 2001).

In the Knight case, the defendant was alleged to have a criminal history category of VI based upon prior convictions. His guideline range was 151 to 188 months and he was sentenced to 162 months. On appeal, the defendant alleged that 3 points were incorrectly applied to him, and asserted that his correct criminal history was V and his correct guideline range was 140 to 175 months. The Government conceded that the defendant's assertions were correct but argued that since he had been given a sentence that fell within the 140 to 175 month range, it was harmless. The Third Circuit disagreed, finding that an application of an incorrect guideline range presumptively affects a defendant's substantial right, that is, it is presumptively prejudicial, and that a defendant has a right to a sentence that not only falls within a legally permissible range, but was imposed pursuant to correctly applied law. It is thus presumptively prejudicial for Foley to have suffered a sentence that was 5 years greater than the law required. Based

8.

upon the fact that erroneous information was used to enhance Foley's sentence, this court should find that defense counsel provided ineffective assistance of counsel because he failed to investigate and challlenge this information. Foley was entitled to due process of law and a fundamentally fair hearing at sentencing, yet because of counsel's errors, these rights were violated. There is little doubt that counsel's deficient performance more likely than not altered the outcome in this case. See Strickland, 466 U.S. at 693. Had counsel acted in a professional manner, Foley would have been found to have a criminal history category of V and a guideline range of 210 to 262 months, thus counsel provided ineffective assistance of counsel in violation of the Sixth Amendment.

9.

### B.   DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO INFORM PETITIONER ABOUT POSSIBLE SENTENCING ENHANCEMENTS

Foley contends that defense counsel provided ineffective assistance of counsel when he failed to inform him about possible sentencing enhancement prior to the signing of the plea agreement. Specifically, Foley was enhanced by a total of six points; 2 points for obstruction of justice and 4 points for being a leader/organizer. These enhancements resulted in Foley's Guideline range increasing from 27 points to 33 points. This corresponds to an increase in a sentencing range from 130-162 months to 235-293 months. As Foley has already demonstrated herein, the Supreme Court has already determined that an increase in prison time amounts to prejudice. See Glover v. United States, 531 U.S. 198 (2001).

In 2000, the Supreme Court held in Apprendi v. New Jersey, 530 U.S. 466 (2000), that the Due Process Clause was implicated and that the constitution requires that any fact that increases the penalty beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt.

In Apprendi, the defendant had been charged with 23 counts of various firearm and weapons violations resulting from the defendant firing the weapons into the home of an African-American family. The defendant accepted a plea agreement as to the alleged weapons violation. Under the law, these charges carried

10.

a sentence range of 5 to 10 years of imprisonment. However, after
the plea was accepted by the court, the judge found by a preponderence
of the evidence that the defendant firing of the weapon had been
racially motivated and thus increased the defendant's sentence
to 12 years. The Supreme Court reversed the sentence, and in doing
so held that "under the Due Process Clause of the Fifth Amendment
and the notice and jury trial guarantees of the Sixth Amendment,
any fact (other than prior conviction) that increases the maximum
penalty for a crime must be charged in an indictment, submitted
to a jury, and proven beyond a reasonable doubt." Apprendi, 530
U.S. at 476 (citing, Jones v. United States, 526 U.S. 227 (1999)).

     Left open after the Apprendi decision was the question of
what constituted the "maximum penalty" in a particular crime.
This question was answered several years later in the case of
Blakely v. Washington, 542 U.S. 296 (2004). In the Blakely case,
the defendant had pleaded guilty to kidnapping his estranged wife.
The facts admitted in his plea, standing alone, supported a
maximum sentence of 53 months, but the trial court judge imposed
a 90 month sentence after finding that the defendant had acted
with deliberate cruelty. Once again, the Supreme Court reversed
the sentence. In the case, the Court held that "[o]ur precedents
make clear, however, that the 'statutory maximum' for Apprendi
purposes is the maximum sentence a judge may impose solely on the
basis of the facts reflected in the jury verdict or admitted by

11.

the defendant." Blakely, 542 U.S. at 303 (citing, Ring v. Arizona,
536 U.S. 584 (2002))(emphasis in the original). Most notably, and
relevant to the instant claim, was the Court's holding that
"nothing prevents a defendant from waiving his Apprendi rights.
When a defendant pleads guilty, the [prosecutor] is free to seek
judicial sentence enhancements so long as the defendant either
stipulates to the relevant facts or consents to judicial fact-
finding." Blakely, 542 U.S. at 310.

    Here, defense counsel effectively caused Foley to waive
his Apprendi rights by failing to inform Foley that the Government
would have been required to demonstrate beyond a reasonable doubt
to a jury all the facts required to increase his sentence, and
those facts would have required to have been charged in the
indictment. The draft copy of the plea agreement presented to
Foley by his defense attorney failed to inform Foley that he
could be enhanced by six levels for a leadership role and obstruct-
ion of justice allegation. Notably, the indictment failed to
put forth any of these possible enhancements as well. Thus at the
time of his plea agreement, Foley lacked the requisite knowledge
to make an informed decision as to the best avenue of defense in
the case. As the Blakely case (which was decided before Foley's
sentencing and change of plea hearing) makes clear, Foley could
not be sentenced to sentence greater than that stipulated by the

12.

facts in the plea agreement. In the plea agreement, the only
stipulated facts were the controlled substance was deemed to be
marijuana and the quantity in question was deemed to be at least
1000 kilograms but less than 3000 kilograms. As to these stipulated
facts, Foley's Guideline range should have been 130 to 162 months
based upon an offense level of 27 and a criminal history category
of VI.[1] Yet, Foley was unaware of this fact when he signed the
plea agreement because defense counsel failed to inform him about
these facts and the relevant case law. The difference in his
sentence amounted to more-than 100 months of incarceration.

Foley's claim is further bolstered by the fact that defense
counsel repeatedly assured Foley that his sentence would not be
greater than 16 years without the three point reduction for
acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

The Supreme Court has long held that the Constitution requires
that a plea be made knowingly, intelligently and voluntarily.
See United States v. Brady, 397 U.S. 742 (1970). See also Hill
v. Lockhart, 474 U.S. 52 (1985). This Circuit has held that a
court must "judge the reasonableness of counsel's challenged
conduct on the facts of the particular case, reviewed as of the
time of counsel's conduct." Sistrunk v. Vaughn, 96 F.3d 666,

---

1.    It should be noted that Foley alleged in the first claim
      herein that his actual Criminal History level should have
      been V rather than VI. Such a finding results in a sentence
      range of 120 to 150 months.

13.

670 (3d Cir. 1996).

In the instant matter, not only did defense counsel grossly underestimate the amount of time that Foley could be held liable for, he also failed to challenge the enhancements under a Booker Sixth Amendment claim. Rather, counsel merely alleged that each of the enhancements should not apply to Foley instead of informing the court that the enhancements should not apply to Foley because his plea agreement and indictment did not alleged these facts. As already shown herein, in order for the increased sentence to be valid, either the facts used to enhance Foley's sentence would have had to be proven beyond a reasonable doubt to a jury or Foley would have had to stipulate to those facts in his plea agreement. Since neither of these instances occurred, defense counsel should have raised this claim during sentencing.

The facts of this case are similar to those found in the case of United States v. Gordon, 156 F.3d 376 (2d Cir. 1998). In that case, the defendant was indicted on twelve counts. During the pretrial stage, counsel informed the defendant that he faced only 120 months total incarceration as to the twelve counts. The defendant proceeded to trial on the counts after rejecting an earlier plea offer from the Government for a sentence of 84 months. The defendant was found guilty on all twelve counts and sentenced to 210 months of imprisonment. The defendant filed an appeal alleging that defense counsel had provided ineffective assistance

14.

of counsel because he incorrectly informed the defendant about the possible maximum sentence. The district court found that counsel had indeed provided ineffective assistance of counsel and granted the defendant a new trial. The Government appealed that decision but the Court of Appeals affirmed the district court's decision.

This Circuit addressed this issue in the case of <u>United States v. Day</u>, 969 F.2d 39 (3d Cir. 1992), in which the Court found that the defendant stated a valid Sixth Amendment claim of ineffective assistance of counsel when defense counsel failed to explain to the defendant his possible status as a career offender and erroneously told the defendant that his maximum sentence was half of the actual sentence that the defendant faced. The Court stated, "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." <u>Id</u>. at 43.

Also of great value in the <u>Day</u> case was the Court's finding that the district court has the ability to fashion an appropriate remedy for such claims. The Court stated specifically that:

> "That suggests that a second opportunity to accept a plea agreement ought not to be automatic, but it does not follow that the relief of 'specific performance' of a plea bargain is <u>never</u> appropriate, as the district court seemed to hold. The cases cited above reveal a variety of different approaches to this problem, which the district court may wish to consider <u>if</u> this case reaches that stage. See, for example, <u>Turner</u>, 858 F.2d at 1208, <u>Alvernaz</u>, 2 Cal. 4th at 943-44, 8 Cal.

15.

Rptr.2d at 725-26, 830 P.2d at 759-60
(no presumption of vindictiveness;
prosecutor may reinstate former offer
or may elect to retry the defendant and
to resume the plea negotiation process);
and 940 F.2d at 1001-02 (petitioner had
no absolute right to reinstatement of
plea offer, but the government could
withdraw the offer only upon a showing
that the withdrawal was not vindictive);
Williams, 605 A.2d at 110-11 (authorizing
petitioner to enter guilty plea pursuant
to plea offer and be resentenced
accordingly)."

Day, 969 F.2d at 47 (emphasis in the original).

Thus, this court may fashion a remedy such as finding that

counsel provided ineffective assistance of counsel, but rather

than dismissing the plea and remanding the case back for a new

trial, the court may also find that the six point enhancement

should not apply to Foley's offense level and thus resentence him

based upon the new calculations.

In this case, in order to induce Foley to accept a plea

offer the Government dismissed several of the counts alleged in

the indictment. These counts included count two, which was the

distribution and possession with intent to distribute a substance

containing methamphetamine; count four, which charged possession

of a firearm by a convicted felon; count five, which was the

knowing use of an identification of another to distribute and

possess marijuana; and counts seven through sixteen, which

16.

charged Foley with conducting financial transactions to conceal
the proceeds of unlawful activity. Based upon these dismissals
and defense counsel's repeated assurances that Foley would not
receive a sentence greater than 16 years, Foley plead guilty.
However, Foley had some misgivings before sentencing and asked
the district court to withdraw his plea when he filed a
pro-se motion with the court. At that time, defense counsel
reassured Foley once again that he would not get a sentence
greater than 16 years, and he also informed him that his co-
defendant, John Kirkpatrick, would get a reduced sentence based
upon Foley accepting the plea agreement. Foley agreed to move
forward with his plea agreement based upon counsel's information.
The district court did question Foley about any promises at the
change of plea hearing on April 29, 2005, and Foley responded
that "I don't know if it would be called a promise, concerning
my co-defendant, he was to get reduced charges and stuff." See
Hearing Transcripts at page 16. When the district court confessed
to no knowledge about this issue, Foley reiterated the claim.
He stated that "[c]oncerning my co-defendant, John Kirkpatrick,
there were certain things, he was going to get certain things."
See Hearing Transcripts at page 16. Defense counsel quickly
assured the court that this issue had been resolved and the
court accepted the plea agreement. The district court eventually
sentenced Foley to an aggregate total of 330 months of imprison-

17.

ment.

This increased sentence was based upon the six point en-
hancements that Foley received and placed his sentence well beyond
the 16 years that defense counsel had told Foley that he'd receive
Foley contends that had he known the true amount of time that
he faced he would have gone to trial. This assertion is supported
by the facts in this case. First, Foley sent the district court
a pro-se motion seeking to withdraw his plea agreement when he
felt that his attorney was not giving him complete information.
He did not withdraw that motion until defense counsel reassured
him that he faced no more than 16 years of prison time. Second,
Foley clearly put on the record that there were promises made to
induce him to plead guilty, namely, granting his co-defendant
a reduced sentence. Third, even if Foley had gone on to trial,
his combined sentence would not have exceeded the 330 month
aggregate sentence that he eventually received as a result of
his plea agreement. This is so because the dismissed counts
would have been grouped together pursuant to U.S.S.G. §§ 3D1.2
and 3D1.3 for sentencing purposes. Further, pursuant to U.S.S.G.
§ 5G1.2, all counts, except count three (firearm count) would
have run concurrent to each other. In the end, the only benefit
that Foley got from the plea agreement was a three point reduction
for acceptance of responsibilty. Yet this was negated by the
six point enhancement he received for the obstruction of justice

18.

factor and leadership role, enhancements that Foley was unaware that
he would be liable for and the adverse effect they would have on
his sentence.

With regards to the first prong of the Strickland test,
Foley contends that defense counsel erred, especially in light of
the fact that both Apprendi and Blakely had long been decided
before Foley's indictment was even handed down and Booker was
decided before Foley's plea agreement was reached. Therefore,
counsel should have recognized the importance of informing
Foley about the relevant law before having him agree to sign
the plea agreement. So too, counsel should have also known what
the appropriate sentence range was going to be and given Foley
accurate information so that he could make an informed decision.
Instead, in an effort to speed through the process, defense
counsel gave Foley inaccurate information about Foley maximum
liability and failed to inform Foley about the limited benefit
of the dismissed counts. For instance, under Amendment 599 of
the United States Sentencing Guidelines, the Commission held that

> "If a sentence under this guideline is
> imposed in conjunction with a sentence
> for an underlying offense, do not apply
> any specific offense characteristic for
> possession, brandishing, use, or dis-
> charge of an explosive or firearm when
> determining the sentence for the under-
> lying offense.
> If the ... weapon that was possessed ...
> in the course of the underlying offense
> also results in a conviction that would

19.

> subject the defendant to an
> enhancement under ... § 2K2.1
> (b)(5) ... do not apply the
> enhancement. A sentence under
> this guideline accounts for the
> conduct covered by these
> enhancements because of the
> relatedness of that conduct
> to the conduct that forms the
> basis for the conviction under
> ... § 924(c)."

U.S.S.G. Amendment 599. See also United States v. Smith, 196

F.3d 676 (6th Cir. 1999) and United States v. Brown, 332 F.3d

1341 (11th Cir. 2003).

As the above example demonstrates, there was relevant case

law handed down prior to the commencement of the proceedings

against Foley to indicate that under various provisions of the

Guidelines, Foley's sentence would have been essentially equivalent

to the sentence received by Foley as a result of the plea agreement.

Again, Foley was unaware of this fact at the time of the plea

agreement because counsel kept this information from him, along

with failing to inform him that he would also be liable for a

six level enhancement.

With regards to the second prong of the Strickland case, that

is, the prejudice inquiry. Foley contends that he was prejudiced

in two manners. First, he was manipulated into signing an agreement

under the pretense that in doing so, he would aid his co-defendant,

Kirkpatrick, with reduced charges, that his sentence would not be

greater than 16 years and that no enhancements were applicable to

20.

him. Second, through counsel's failure, Foley received an enormous
increase in his sentence. As already noted herein, Foley received
a sentence of 330 months of incarceration, which included the
six points for the enhancements. Yet, without these enhancements,
Foley's sentence range would have been 130 to 162 months. Even
with the 60 month consecutive sentence for the § 924(c) violation,
the total sentence would not have exceeded 222 months. So too,
counsel's unprofessional errors resulted in Foley accepting a
plea agreement to a sentence that was essentially the same sentence
he would have received had he taken the case to trial. Each of
the counts alleged in the indictment were closely related, thus
they would have been grouped for sentencing purposes and would
have only increased Foley's offense level by a couple of points.
Additionally, the Guidelines also make clear that Foley's sentence
would have resulted in each of the counts running concurrent with
each other.

Foley could not make an intelligent and knowing decision
with regards to his plea agreement based upon counsel's failure
to inform him about the enhancements, counsel's assurance that his
sentence would not exceed 16 years, and counsel's failure to inform
him about the limited benefits of the dismissed counts. This
resulted in Foley receiving an enhanced sentence, which prejudiced
him. See Glover v. United States, 531 U.S. 198 (2001).

21.

C.  DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE
OF COUNSEL AT SENTENCING WHEN HE FAILED TO RAISE ANY OF
THE MERITORIOUS CLAIMS

Foley contends that defense counsel provided ineffective assistance of counsel at sentencing when he failed to raise any meritorious claims.

In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the United States Supreme Court held that 18 U.S.C. § 3553(b)(1), which made the Federal Sentencing Guidelines mandatory, was incompatiable with the requirements of the Sixth Amendment to the United States Constitution and thus declared it must be severed and excised from the Sentencing Reform Act of 1984. Such an action deemed that the Guidelines were no longer mandatory, but rather, advisory in nature.

The sentencing courts are still obligated to consult with those Guidelines and take them into account, however, they must also take into account the sentencing factors set forth in 18 U.S.C. § 3553(a). The factors set forth in 18 U.S.C. § 3553(a) consist of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed --

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

22.

'(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the advisory guideline range;

(5)   any pertinent policy statement issued by the Sentencing Commission;

(6)   the need to avoid unwarranted sentence disparities; and

(7)   the need to provide restitution to any victims of the offense.

It was against this backdrop that Foley appeared for sentencing. Yet, unexplainably, defense counsel did not raise any factors that could have been used by the court to lower Foley's sentence. While it is true that defense counsel objected to the enhancements for obstruction of justice and leadership role, and that the criminal history overstated the seriousness of the instant offense, these factors pertained to the advisory guideline range, and thus did not address the other factors available under 18 U.S.C. § 3553(a). Thus, at sentencing, counsel only address § 3553(a)(3), but failed to put forth any arguments for the remaining six factors.

23.

In <u>United States v. Dalton</u>, 404 F.3d 1029, 1033 (8th Cir. 2005), the Circuit Court stated that "[s]entences varying from the guideline range ... are reasonable so long as the judge offers appropriate justification under the factors specified in 18 U.S.C. § 3553(a)." Here, had counsel put forth any type of valid sentencing argument, the district court would have had a more complete picture in which to determine an appropriate, individualized sentence for Foley.

In <u>United States v. Cooper</u>, 437 F.3d 324 (3d Cir. 2006), this Circuit addressed the issue of the court's need to adequately consider the statutory factors set forth in 18 U.S.C. § 3553(a). The <u>Cooper</u> court held that "[t]o determine if the court acted reasonably in imposing the resulting sentence, we must first be satisfied the court exercised its discretion by considering the relevant factors." <u>Id.</u> at 329 (<u>citing</u>, <u>United States v. Cunning ham</u>, 429 F.3d 673 (7th Cir. 2005)).

As each of these cases demonstrate, the district court would have been required to consider each of the factors set forth in 18 U.S.C. § 3553(a). Toward that end, it was incumbent upon defense counsel to provide the court with information relevant to the court's determination of an appropriate sentence for Foley. Courts throughout the various circuits have relied upon many different types of factors when determining reasonable

sentences for defendants. For example, in United States v. Smith, 359 F.Supp.2d 771 (E.D.Wis. 2005), the district court found that "the disparity in sentences involving crack and powder brings irrationality and possible harmful mischief into the criminal justice system" and sentenced the defendant outside the guideline range. See also United States v. Grossman, 513 F.3d 592 (6th Cir. 2008)(reducing defendant's sentence from 120 months to 66 months based on the findings that guideline range overstated the seriousness of the offense); United States v. Pauley, 511 F.3d 468 (4th Cir. 2007)(reducing defendant's sentence by 36 months based upon remorse of defendant, loss of teacher's certification after conviction, lifetime supervised release provision and counseling defendant received while incarcerated); and United States v. Husein, 478 F.3d 318 (6th Cir. 2007)(granting defendant a one day sentence rather than 37 to 46 guideline range sentence based upon family circumstances where defendant was "irreplace-able" to her family).

In this case, there were several different facts that defense counsel could have put forth as arguments on Foley's behalf. For example, under § 3553(a)(2)(D), the court should "provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." First, unlike many people entering the prison system, Foley had previously completed a high school level of

25.

education and had several areas of practical experience that would allow him to gain meaningful employment upon his release, thus there was no need for the court to give him a lengthy incarceration so that he could obtain these educational levels.[2]

Second, Foley had been suffering from a mental health condition, a condition that Foley contends will need to be treated by competent mental health specialist and that the Bureau of Prisons is not the best or most effective place for Foley to receive such treatment. It should also be noted that § 3553(a)(3) allows the court to take into consideration the types of sentences available, thus the court could have given Foley community-based treatment, in conjunction with a lower sentence. Worst still, defense counsel failed to even consult with an expert on the subject to ascertain the extent of Foley's mental health condition or the best treatment options for Foley. Surely, if a competent medical expert reported that Foley needed some type of community-based treatment, the court would have taken that into account. Further, such a report may also have informed the court as to the underlying cause of Foley's behavior and criminal activities. Also of noted was the fact that Foley had been a drug user since the age of 14, this fact allows for the

---

[2]. The BOP held that Foley had not obtained his high school diploma and thus required him to sit for the GED examination. He took and passed the exam and was told that his scores were some of the highest ever recorded.

court to also commit Foley to a substance abuse facility in lieu
of a lengthy sentence or in conjunction with a lesser sentence.

Further, § 3553(a)(1) instructs that the court should review
the "characteristics of the defendant" when determining a proper
sentence. Here, as Foley showed briefly in issue one, he was the
product of a family environment that fostered lawlessness. Indeed,
at a young age, Foley was the victim of his father's abduction and
seperation from his mother. This surely had an impact on Foley's
psyche. His father only played a bare minimum role as to his
upbringing. But too, as already noted herein, both Foley's
brothers and guardian have criminal records. Therefore, the court
could have taken into account the fact that Foley was raised in a
situation that would be conducive to a young man turning to a life
of crime. Also, the court would have looked at § 3553(a)(7), which
dealt with the "need to provide restitution to any victim of the
offense." In this case, there were no identifiable victims, however,
Foley did forfeit hundreds of thousands of dollars to the Govern-
ment as part of his plea agreement. Since there were no victims in
the case, that money went directly into the Government's coffers
and aided the Government in its fight against crime.

These are just some of the possible issues that defense
counsel could have raised before the court as meritorious issues
that would have allowed for a sentence below the sentencing
guideline range. This is not an exhaustive list by any means.

27.

Foley contends that since he plead guilty, defense counsel was alleviated from having to prepare for a criminal trial, thus his energy should have gone towards ensuring that the sentencing hearing was an adversarial proceeding that was contested by the defense, especially since Foley was entitled to counsel during all critical stages of the proceedings. This was not done in this case.

For example, while Foley would not have raised an insanity defense at sentencing, he was still entitled to have a mental health professional evaluate him. In the Supreme Court case of Ake v. Oklahoma, 470 U.S. 68 (1985), the Court held that the government "assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Id. at 83.

Here, had defense counsel obtained a mental health specialist, that individual would have been able to provide the court with a more definitive assessment of Foley to include any chronic mental health problems and possible remedies and/or treatments. The Supreme Court further held in Ake that "due process requires the appointment of a mental health expert ... [if] the defendant establishes the likelihood that his mental condition could have been a significant mitigating factor." Id. at 83. Therefore, counsel would have been well within his duty by requesting or consulting with a mental health specialist.

28.

The Supreme Court held in <u>Strickland</u> that one of the bench-marks in determining a claim of ineffectiveness was "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." <u>Strickland</u>, 466 U.S. at 686.

In this instance, the Government fulfilled its obligation, that is, it presented to the court each of the aggravating factors that it deemed relevant to ensure that Foley received a sentence that was as harsh as possible under the law. However, defense counsel failed to fulfill his obligation, that is, he failed to provide the court with any mitigating factors that would have allowed the court to form a more rounded and accurate picture of Foley prior to sentencing. Thus it is apparent from the record that the adversarial process in this instance was not functioning. And while Foley cannot say conclusively that the district court would have given him a lesser sentence had defense counsel put forth mitigating factors, the real point to be made is that "there is a reasonable probability that, but for counsel's [failure to put forth any mitigating factors], the result of the [sentencing] proceedings would have been different." <u>Strickland</u>, 466 U.S. at 694. As one court so ably stated "we think the chance of [success] would still have been significantly less than 50 percent; but it would not have been a neglible chance, and that is enough to

require us 'to conclude that the lawyer's errors of representation were, in the aggregate, prejudicial." Miller v. Anderson, 255 F.3d 455, 459 (7th Cir. 2001). See also Stouffer v. Reynolds, 214 F.3d 1231, 1234-35 (10th Cir. 2000)(holding that "the question is not whether counsel's ineffectiveness must be demonstrated by showing the trial would have resulted in a defense verdict, but whether the omitted evidence creates a reasonable doubt that did not otherwise exist").

Here, a doubt should exist because Foley has shown that there were factors that should have been brought to the court's attention prior to sentencing, factors that would have had to be evaluated by the district court under § 3553(a) as required by law. Indeed, not only would these factors have been evaluated by the district court, but they were factors that could have given Foley some relief.

This circuit has addressed this issue in United States v. Watson, 482 F.3d 269 (3d Cir. 2007). In the Watson case, the defendant had been charged with bank robbery and plead guilty to the charge. His Presentence Report found that he had an offense level of 29 and a criminal history category of VI, which meant a Guideline range of 151 to 188 months. During the sentencing hearing, defense counsel put forth several mitigating factors that he believed should be evaluated by the district court. These factors included premature birth followed by an extended hospital-

ization, alcohol and drug abuse, bouts of depression, and that he
was diagnosed with AIDS and had been under medical care for 13
years and that his health-related problems had increased while
the defendant was housed in the Federal Detention Center. The
Government also put forth aggravating factors. The district court
went below the Guideline range and sentenced the defendant to
120 months. In that case, the defendant appealed the sentence,
arguing that it was unreasonable due to his medical condition,
but the Third Circuit upheld the district court's sentence.
In reaching its decision, the Third Circuit reiterated the fact
that the district court has the power to fashion a sentence for
a particular defendant based upon the facts of the case. But
just as important as that finding, the Watson case is illustrative
here because it showed the type of evaluation a district court
can make with regards to the § 3553(a) factors once defense
counsel provides the court with any mitigating factors. While
the defendant may not have been happy with the 10 years sentence
he received in the Watson case, it was still a decrease of at
least 20% and almost three years, simply because defense counsel
in that case choose to put forth the mitigating factors. Yet that
did not happen in this case, and that resulted in ineffective
assistance of counsel, in violation of the Sixth Amendment to
the U.S. Constitution.

## IV.   CONCLUSION

Based upon the argument and authorities cited herein, Foley asks that this court find that defense counsel provided him with ineffective assistance of counsel and grant him the relief sought. Further, Foley asks that this court hold his pleadings to a lesser standard than those drafted for lawyers. See Haines v. Kerner, 404 U.S. 519 (1972).

Respectfully submitted,

MAY 5, 2008
_____
DATE

_____
Maurice F. Foley
United States Penitentiary
P.O. Box 305
Jonesville, VA  24263

32.

## CERTIFICATE OF SERVICE

I, Maurice F. Foley, hereby certify that a true and accurate copy of the foregoing instrument has been sent on this date through the U.S. Mail, postage prepaid, to: Christian A. Trabold, Assistant U.S. Attorney, Office of the U.S. Attorney, Federal Courthouse, 17 South Park Row, Room A330, Erie, PA 16501-1158.

_MAY 5, 2008_
DATE

Maurice F. Foley

33.